Margaret GARDNER and D. H. Gardner, Plaintiffs-Appellees,

v.

DARLING STORES CORPORATION, Defendant-Appellant.

No. 69, Docket 24084.

United States Court of Appeals Second Circuit.

Argued Dec. 3, 1956.

Decided Feb. 26, 1957.

**4**

Dammann, Roche & Goldberg, New York City, and Slabaugh, Walker, Pfluger, Roderick & Myers, Akron, Ohio (Allen Blank, New York City, of counsel), for plaintiffs-appellees.

Eugene Frederick Roth, New York City (Bruno Schachner, Stanley M. Dorman and John L. Burling, New York City, of counsel, on the brief), for defendant-appellant.

Before CLARK, Chief Judge, FRANK * and LUMBARD, Circuit Judges.

LUMBARD, Circuit Judge.

This is an action for the breach of several terms of a lease. The court directed a verdict on two of the issues and the jury found for the plaintiff on the third. We affirm.

On March 1, 1946, plaintiff, Margaret Gardner, a citizen of Ohio and defendant, Darling Stores Corporation, incorporated in New Jersey, entered into a 99 year lease, by which Mrs. Gardner leased property on South Main Street in Akron, Ohio to Darling Stores. Dar-

---

* Judge Frank died after voting to affirm, but before expressing his views with respect to this opinion.

ling Stores was to erect a building within a reasonable time after May 1946, to assume all of Mrs. Gardner's liabilities and obligations on any party wall agreement with respect to this property in return for all of plaintiff's rights to the use of said party wall, and to pay rent. Because of postwar shortages of material, restrictions were imposed on commercial building by the Civilian Production Administration in March 1946, one of which required that, with certain exceptions for small dollar amounts, no commercial building such as here contemplated be undertaken without CPA authorization. 11 Fed. Reg. 3190 (March 27, 1946). The lease was therefore modified in April 1946 to provide that Darling Stores was immediately to prepare and submit plans to Mrs. Gardner for her approval and she was then to get a permit from the CPA. If this were delayed, Mrs. Gardner waived the time requirement for completion of the building, but only up to July 1, 1947. The rental was similarly postponed, and also "not later than July 1, 1947." If the present restrictions rendered it not "feasible to complete the building by July 1, 1947, the lessee * * * [had] the right to cancel the lease, provided that the terms and conditions thereof, except as modified herein, have been kept." This revised lease was finally executed on May 1, 1946.

In July 1946 Darling Stores agreed to submit tentative sketches on some plans which had been drawn up earlier for Mrs. Gardner. These were rejected by the CPA in August. The plans were again submitted with an estimated cost figure of $75,000. (The record does not show what estimated cost was stated with the sketches submitted in August 1946.) A permit for the building was then granted on December 4, 1946. Revisions of considerable detail were made by Darling Stores and approved by Mrs. Gardner on or about January 27, 1947. These plans appear to have been tentatively approved by the agency, for Mrs. Gardner's attorney wrote the defendant on January 31 that the agency "informed us that such changes as appear in the plans as against those which were originally filed as prepared by [Mrs. Gardner's architect] are not material and will not affect the authorization. They have requested, however, that the formal filing of the plans be completed, which, as indicated above, is being done. We, therefore, request that your clients commence construction of the building immediately."

At this time, in February 1947, the adjacent owner with whom Mrs. Gardner shared a party wall, called on her to pay $2,622.45 as her share of some necessary repairs to the wall. Mrs. Gardner referred this to Darling Stores for them to pay, but they refused, and she thereupon paid the amount herself.

The building was not completed by July 1, 1947; in fact no construction was even started by then. All that Darling Stores ever did was to make test borings in March 1947. Apparently Darling Stores found it difficult to get contractors, for in July 1947 Darling Stores wrote that "for the past several months, we have been endeavoring to secure prices for this construction but to no avail." On July 1, 1947 the first payment of rent fell due. Darling Stores did not pay it and sought an extension of time. Mrs. Gardner refused and wrote Darling Stores that she would cancel the lease and retake the property pursuant to the lease unless payment were made by July 30. Darling Stores still did not pay and tried to get an extension of time on the rent and on the obligation to build, which Mrs. Gardner refused. She then sought a release from Darling Stores to clear the lease from the records. When Darling Stores did not comply with this request, Mrs. Gardner brought an *in rem* action in Ohio in September 1947 to have the lease expunged and the title cleared and in October 1947 judgment was awarded in her favor. In 1948 she constructed a building on the premises for about $175,000.

In 1954 Mrs. Gardner brought this action for breach of contract, seeking damages for the failure to build, for failure to pay one month's rental and for breach of the party wall agreement. After filing its answer, Darling Stores moved to amend it by adding a plea of *res judicata* claiming that all of Mrs. Gardner's claims were merged in the Ohio *in rem* judgment. This was denied on the merits. At the trial, Judge Dawson directed a verdict for plaintiff on the party wall and rental issues and submitted the issue of breach of the building contract to the jury which returned a verdict for plaintiff on that count for $27,000. At the time of the charge, both parties stipulated for the judge to compute interest at 6% on any amount which might be awarded, and the jury was instructed in accordance with this stipulation. After verdict, however, Darling Stores said it had been mistaken about the interest and claimed that under Ohio law no interest was permitted on contract actions where the damages were unliquidated. Judge Dawson denied this under both Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A.[1] as not timely raised, as well as on the merits of Ohio law.

Darling Stores appeals claiming error in six respects: (1) that the court in effect directed the jury to find that Darling Stores had waived the inadequacy of the permit, and that this was not supported by the evidence; (2) that the court applied an erroneous theory of damages and that the jury's verdict of $27,000 was not supported by the evidence; (3) that the court erred in directing a verdict for the plaintiff on the party wall agreement; (4) that the court improperly withdrew the issue of feasibility from the jury and thereby ruled that Darling Stores had no right to cancel the lease; (5) that the court should not have added interest; and (6)

that it was an abuse of discretion to refuse to allow the answer to be amended by adding a plea of *res judicata*. We have considered each of these alleged errors and find them all to be without substance.

1. Breach of the building clause.

 It is undisputed that Darling Stores did not complete or even start the building by July 1, 1947. Darling Stores' defense, however, is that its performance was conditioned on Mrs. Gardner's obtaining a valid permit and since the structure would have required at least an expenditure of $140,000, a permit for $75,000 was not a sufficient compliance. The weakness in this argument is that for the whole of the period after the permit had been obtained, up to the termination of relations between the parties, Darling Stores raised no objection to the permit. It had gone over the plans and should have known whether the permit was sufficient. The alterations are certainly not material, for the negotiations detailed above show that no one, not even the agency, considered the alterations a vital part of the agreement. Had Darling Stores brought the alleged inadequacy of the permit to Mrs. Gardner's attention, she might well have tried to obtain another one. This non-action operates as a waiver of any objection to Mrs. Gardner's performance of her obligation under the lease. We thus agree with Judge Dawson's statement after his main charge, and by way of supplemental instruction to the jury, that "The Darling Stores Corporation had the right, if it felt that the permit was not sufficiently large in amount, to say it wasn't feasible to build a building, and cancel the lease, or they could have gone back to Mrs. Gardner and said 'Get us a permit for a larger amount.'" Although the practical effect of this charge was to instruct that as a matter

[1] " * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection * * *."

of law Darling Stores' defense had not been established, the evidence warranted this.

2. Damages.

■ The judge charged that Mrs. Gardner was entitled to the difference between the value of the vacant property and the value of that property with a $75,000 building thereon. The jury returned a verdict for $27,000. The judge's charge was an accurate statement of the appropriate measure of damages, and in view of the broad powers of the jury to estimate such damages, we see no reason to disturb their verdict.

3. Breach of the party wall agreement.

■ Darling Stores argues that it was not obligated to pay for the repairs to the party wall because it was not consulted thereon, and that Judge Dawson should therefore not have directed a verdict for the plaintiff. This is different from Darling Stores' original contention in February 1947 that because the damage involved occurred before the lease was executed, it was not liable for the repairs. Both arguments are untenable. As to the argument about consultation, the lease gave Darling Stores only the "use" of the wall, and indicated no rights of consultation as to repairs. As to the second argument, the lease refers to "any and all liability and obligation imposed upon said Lessor by any party wall agreement" and clearly covers the obligation to share the expenses of this repair job.

4. Feasibility.

■ Darling Stores next argues that it had a right to cancel the lease if it was not feasible for it to complete the build-

ing in time, and that the judge improperly withdrew the issue of feasibility from the jury. But, as the judge charged, this right was conditioned on Darling Stores' not breaching any other clauses of the lease. Here, the party wall agreement was breached as well as the agreement to pay rent.

Darling Stores argues, however, that despite the express provisions of the lease, the breach of these conditions should not cut off the right of cancellation. But the cases cited by Darling Stores, Warth v. Liebovitz, 1904, 179 N.Y. 200, 71 N.E. 734; Bitterman v. Gluck, 1st Dept.1939, 256 App.Div. 336, 9 N.Y.S.2d 1007, are clearly distinguishable, for they did not deal with conditions precedent to a right of cancellation.

5. Interest.

■ Despite the parties' agreement before the verdict that 6% interest could be assessed, in accordance with which the judge instructed the jury, Darling Stores now argues that it was mistaken as to Ohio law which allegedly does not allow interest on claims for unliquidated damages. Rule 51, Federal Rules of Civil Procedure is sufficient authority for rejecting this contention.

6. *Res judicata*

■ Judge Dawson's refusal to allow amending the answer to add a plea of *res judicata* was clearly correct. The *in rem* action in Ohio to clear title has no *res judicata* effect on the *in personam* action before us for breach of the lease. See Developments in the Law— Res Judicata, 65 Harv.L.Rev. 313, 334 (1952).

Affirmed.