524 F.2d 767
 1975-1976 O.S.H.D. ( 20,014
 Victor HERMAN and Commissioner of Labor, Government of the
Virgin Islands, Melvin Stevens, Subrogee of Victor Herman
v.
HESS OIL VIRGIN ISLANDS CORP. and Chicago Bridge & Iron
Corp. (D.C. Civil Action No. 222-1972)
Thomas CHERUBIN et al.
v.
HESS OIL VIRGIN ISLANDS CORP. and Chicago Bridge & Iron
Corp. (D.C. Civil Action No. 223-1972)
Franklin HODGE and Commissioner of Labor, Government of the
Virgin Islands, Melvin Stevens, Subrogee of Franklin Hodge
v.
HESS OIL VIRGIN ISLANDS CORP. and Chicago Bridge & Iron
Corp. (D.C. Civil Action No. 224-1972)
Sylvester MATTHEW and Commissioner of Labor, Government of
the Virgin Islands, Melville Stevens, Subrogee of
Sylvester Matthew
v.
HESS OIL VIRGIN ISLANDS CORP. and Chicago Bridge & Iron Co.,
Ltd. (D.C. Civil Action No. 510-1972)
Wilfred CHASE and Commissioner of Labor, Government of the
Virgin Islands, Melville Stevens, Subrogee of Wilfred Chase
v.
HESS OIL VIRGIN ISLANDS CORP. and Chicago Bridge & Iron Co.,
Ltd. (D.C. Civil Action No. 512-1972)
Matthew BAPTISTE and Commissioner of Labor, Government of
the Virgin Islands, Melville Stevens, Subrogee of
Matthew Baptiste
v.
HESS OIL VIRGIN ISLANDS CORP. and Chicago Bridge & Iron
Company, Ltd. (D.C. Civil Action No. 513-1972)
and
HESS OIL VIRGIN ISLANDS CORP., et al.
v.
CHICAGO BRIDGE & IRON COMPANY, LTD. (D.C. Civil Action No. 598-1972)
Appeal of CHICAGO BRIDGE & IRON COMPANY, LTD., in Nos.
74-2012, 74-2015 and 74-2233.
Appeal of Franklin HODGE et al., in Nos. 74-2013 and 74-2014.
 Nos. 74-2012 to 74-2015 and 74-2233.
 United States Court of Appeals,
Third Circuit.
 Argued April 25, 1975.
Decided Sept. 23, 1975.
 
 Warner Alexander, Merwin, Alexander & O'Brien, Christiansted, St. Croix, V. I., Denis V. Brenan, Thomas A. Masterson, Morgan, Lewis & Bockius, Philadelphia, Pa., for appellant Chicago Bridge & Iron Company, Ltd.
 J. Michael Spencer, Frederiksted, St. Croix, V. I., John B. Murphey, John M. O'Quinn, W. James Kronzer, Kronzer, Abraham & Watkins, Houston, Tex., Charles Allen Wright, Austin, Tex., for appellants in 74-2013 and 74-2014.
 John R. Caffrey, John J. Witous, James T. Ferrini, Clausen, Miller, Gorman, Caffrey & Witous, Alexander A. Farrelly, Birch De Jongh & Farrelly, Charlotte, Amalie, for Hess Oil Virgin Islands Corp.
 OPINION OF THE COURT
 Before HASTIE, GIBBONS and HUNTER, Circuit Judges.
 HUNTER, Circuit Judge:
 
 
 1
 This is an appeal from a judgment entered after a jury verdict. Plaintiffs below, six employees of contractors engaged by Hess Oil Virgin Islands Corp. ("Hess"), were severely burned when a large partially-filled oil storage tank owned by Hess exploded. The explosion occurred while workers from appellant Chicago Bridge & Iron Company, Ltd. ("CB & I") were welding into place some horizontal foam piping, a safety system which, when installed, was designed to transmit into the storage tanks a fire extinguishing chemical foam. Plaintiffs sued both Hess and CB & I for personal injuries, and Hess cross-claimed against CB & I for property damage to its storage tank. The jury absolved Hess of all liability and found in favor of the personal injury plaintiffs against CB & I, awarding them $7,184,600.42 in compensatory damages and $5,000,000 in punitive damages. In addition, the jury found in favor of Hess on its property claim against CB & I, and awarded Hess $1,045,000 in damages. Consequently, the total verdict against CB & I was $13,229,600.42.
 
 
 2
 The trial court denied CB & I's motions for judgment n. o. v. and for a new trial, on the condition that the personal injury plaintiffs file a remittitur of the punitive damages award in the amount of $4,000,000 within thirty days. On August 27, 1974, the plaintiffs filed such a remittitur. CB & I then appealed the judgment of the district court, but on August 6, 1975, subsequent to oral argument before this Court, CB & I reached a settlement with the personal injury plaintiffs in the amount of $6,000,000.00. Consequently, CB & I's appeal is limited to two issues: (1) whether the judgment in favor of Hess and against CB & I on Hess' property damage claim should be sustained, and (2) whether the jury verdict absolving Hess of liability in the personal injury plaintiffs' suit against Hess (thereby making CB & I responsible for the entire recovery) should likewise be upheld.
 
 
 3
 With respect to both issues, CB & I first contends that the verdict was against the weight of the evidence. In short, it claims that the jury could not rationally have held it liable for Hess' property damage or have absolved Hess of all liability toward the personal injury plaintiffs. We note at the outset that our standard of review is quite limited and that, as an appellate court, we must view the evidence in the light most favorable to the party which obtained the verdict below. Trent v. Atlantic City Electric Co., 334 F.2d 847 (3d Cir. 1964). As we stated in Massaro v. United States Lines Co., 307 F.2d 299, 303 (3d Cir. 1962): "It is fundamental that the evidence and the reasonable inferences to be drawn therefrom must be taken most favorably to the party who secured the verdict."
 
 
 4
 We have carefully considered all of the evidence in this case and, applying the above standard of review, we have concluded that the jury verdict must stand. The evidence is accurately summarized in the district court decision, D.C.V.I., 379 F.Supp. 1268, and we shall not repeat it here. We believe, however, that a few points deserve mention. First, we see no reversible error in the admission of the testimony of Franklin Bradfield, the Hess superintendent who examined the scene of explosion and who gave his opinion as to its causation.[1] CB & I contends that Bradfield's opinion testimony was inadmissible because his qualifications as an expert were not established. However, CB & I's trial counsel did not object to Bradfield's testimony on this ground or seek to question him on his qualifications,[2] and it is well settled that an objection to an expert's qualifications, not having been raised in the trial court, cannot be raised for the first time as appeal. See, e. g., Ramsey v. Complete Auto Transit Inc., 393 F.2d 41, 43 (7th Cir. 1968). CB & I also challenges Bradfield's testimony as having been elicited by leading questions. Plaintiffs called Bradfield as an adverse witness, since he was an employee of one of the defendants (Hess), and justified their use of leading questions on that ground. While CB & I takes the position that Bradfield was in fact a friendly witness who was adverse only to CB & I, defense counsel did not object to this use of leading questions until Bradfield's direct testimony was finished (292a-293a), and even then made no motion to strike.[3]
 
 
 5
 We also reject CB & I's contention that the verdict was tainted because of statements made by Hess' counsel as to "facts" which defendant contends were not in evidence. In particular, CB & I claims that there was no evidence of combustible fumes in the "downcomer"[4] at the time of the explosion and that counsel's reference to testimony about a rattling or rumbling noise in the downcomer, when questioning Hess' expert (Dr. Packer), was a reference to testimony that did not exist and was an attempt to provide missing evidence. Dr. Packer gave it as his opinion that the rattling noise was caused by the ignition of fumes in the downcomer. Several witnesses testified that the explosion was immediately preceded by a rattling or rumbling noise, but most did not identify the source or location. However, it is not true, as CB & I contends, that there was no testimony at all as to a rattling in the downcomer. At least one witness (Mr. Buchanan, a CB & I welder) had told him that there was a rattling or rumbling in the downcomer (2032a).[5] In any event, defense counsel did not object at trial to the reference made by Hess' attorney and its expert to evidence of a rattling in the downcomer. See Ramsey, supra at 44; Hawkins v. Missouri Pacific Railroad Co., 188 F.2d 348, 351 (8th Cir. 1961); Worcester v. Pure Torpedo Co., 140 F.2d 358, 362 (7th Cir. 1944). Had CB & I's trial counsel objected on the basis that there was no such evidence, the trial judge might have considered allowing questions premised on the undisputed evidence that there was a rattling or rumbling noise of some sort, which was consistent with a rattling in the downcomer.
 
 
 6
 As a final point on the sufficiency of the evidence question, we must also reject CB & I's contention that the verdict absolving Hess of liability should be set aside as against the weight of the evidence. CB & I points to evidence that Hess exercised some control over the welding work and thus should have been held liable under § 414 of the Restatement (Second) of Torts. However, we can hardly say that the evidence against Hess was so overwhelming that we must conclude, as a matter of law, that the jury was required to find Hess liable. Given our standard of review of jury verdicts and the right of a defendant to a jury trial, we should not lightly reverse a jury verdict which has absolved a defendant of liability.[6] Here there was ample evidence that CB & I had sole responsibility for the safety of the blinds[7] and that Hess' responsibility was limited to conducting "sniffer tests" before issuing "hot work" permits and to supervising the work only insofar as necessary to ensure that the "end result" complied with the specifications (1588a, 2863a). There was also specific evidence that Hess officials supervising CB & I personnel were not responsible for generally ensuring the safety of the work area (3027a)[8] and CB & I personnel themselves considered the welding a "CB & I endeavor" (1587a-1588a).
 
 
 7
 CB & I next contends that reversal is required by prejudicial remarks made by counsel for Hess and the personal injury plaintiffs during closing argument. Looking at the closing as a whole (as we are required to do), we do not believe that these scattered remarks, to which CB & I's trial counsel failed to object, were so prejudicial as to constitute "plain error." Of the various remarks now claimed to be error, we believe that the only ones having any significant potential for prejudice were those made by counsel for the personal injury plaintiffs referring to CB & I's size and wealth and to the jury's role in doing "something for the community" by sending a "message" all the way to Chicago.[9] CB & I contends that these remarks were substantially identical to those condemned by this Court in Foster v. Crawford Shipping Co.,496 F.2d 788 (3d Cir. 1974).
 
 
 8
 Unlike Foster, however, defense counsel in this case neither made an objection nor filed a motion for a mistrial based on such remarks.9a Furthermore, in this case, unlike Foster, plaintiffs had sued for punitive as well as compensatory damages. It is well settled that the wealth of the defendant is a factor which may properly be considered by the trier of fact in assessing punitive damages,[10] Restatement of Torts § 908(2), and that it is proper to assess punitive damages as a deterrent and an example to the community. See Nader v. Allegheny Airlines, Inc., 512 F.2d 527, 549 (D.C. Cir. 1975); Northwestern National Casualty Co. v. McNulty, 307 F.2d 432, 435 (5th Cir. 1962); Bucher v. Krause, 200 F.2d 576, 587 (7th Cir. 1952). While an appeal to local prejudice against foreign defendants is never permissible even where punitive damages are sought, we do not believe that the isolated remarks about CB & I which were arguably an appeal to local sentiment in this case were so prejudicial in connection with the claim against Hess as distinguished from the claim against CB & I as to constitute reversible error in the absence of any objection or request for a cautionary instruction. We have previously stated that the trial judge is in a better position than an appellate court to determine whether remarks of counsel are prejudicial. Corbett v. Borandi, 375 F.2d 265, 270 (3d Cir. 1967). The trial judge here found no prejudice,[11] and we concur in his judgment.
 
 
 9
 Finally, CB & I contends that the judgment should be reversed because the trial court committed plain and reversible error in leaving the disposition of complex factual and legal issues to the jury without full and complete instructions relating the relevant law to the disputed facts. Under Fed.R.Civ.P. 51, however, objections to jury instructions must be raised before the jury retires, and counsel for CB & I never made such an objection here. Although we have recognized that Rule 51 is not binding where a failure to consider the objection on appeal would lead to a "miscarriage of justice,"[12] and although we have found "plain error" where the jury was given mere "legal abstractions,"[13] we see no basis for reversal here. As the district court noted,[14] counsel for CB & I requested the trial court not to review the evidence in its charge, since counsel proposed that the evidence be developed by the attorneys in their summation. Thus, if there was any error at all, it was "invited error" and cannot now be a basis for reversal.[15]
 
 
 10
 We have carefully considered the remaining contentions raised by CB & I which might affect the finding of its liability as to Hess and the jury's exoneration of Hess, but have found them to be without merit.[16]
 
 
 11
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 In Bradfield's opinion, the explosion was caused when a CB & I welder, Burton, struck an arc to begin some welding. He believed that sparks from the welding ignited fumes escaping from a gap in the blind fastened across the mouth of a nearby "downcomer" (a long pipe running from the top of the tank toward the ground, which was part of the foam piping system being installed). The blinding of the downcomers was indisputably CB & I's responsibility, and Burton admitted having previously loosened one or two of the bolts which fastened that particular blind to the downcomer. Also, a gap in the blind was found after the explosion. Bradfield testified that, in his opinion, the gap could not have been caused by the explosion itself, because there was little evidence of fire damage in the vicinity of the blind
 In addition to this theory of causation, both Hess and the personal injury plaintiffs also offered testimony that the explosion could have been caused by the improper grounding of the welding, which sent an electrical current through the storage tank. We conclude that the evidence was sufficient to sustain the jury's verdict as to CB & I's liability under either theory.
 
 
 [2]
 At two points (272a and 288a), defense counsel objected that foundations with respect to particular areas of questioning had not been laid. In each case, plaintiffs' counsel proceeded to lay the foundation, and the questioning continued without further objection. We do not read these objections as being directed toward Bradfield's qualifications as an expert. In fairness we note that counsel for CB & I on appeal did not try the case in the district court
 
 
 [3]
 Straub v. Reading Co., 220 F.2d 177 (3d Cir. 1955), on which CB & I relies, is of no help to appellant, since counsel in that case had made timely objections to the repeated use of leading questions. Id. at 181
 
 
 [4]
 See note 1, supra, for an explanation of this term
 
 
 [5]
 While Buchanan's testimony was both hearsay and was given in response to a leading question, no objection was made
 
 
 [6]
 We also reject as frivolous CB & I's contention that affirmance here would permit persons who engage in inherently dangerous activities to insulate themselves from liability simply by contracting with a third party and having that party perform the dangerous activities. We are not establishing any rule of law permitting Hess to absolve itself of liability. All we are doing is affirming a verdict in which a jury has absolved Hess
 
 
 [7]
 The blinds were flat metal plates fastened across the mouths of the "downcomer" pipes to prevent the escape of combustible fumes. See note 1 supra
 
 
 [8]
 To the extent that this evidence may appear contradicted by other evidence that Hess had the right to stop any work it considered unsafe, resolution of such a conflict was, of course, a matter for the jury
 
 
 [9]
 The most troublesome statement, in our view, was the following:
 . . . (B)ut I guarantee if you bring back $6,000,000 for punitive damages we sued for, they will hear the message, it will be heard all the way from Chicago and back and any other company that starts doing business on your island is going to have the message because it will travel like wildfire and when they come down to your island they will have a safe operation.
 It is your chance, your opportunity to do something for the community. You owe it to the community and if you fail to do so then that is going to spread like wildfire. And the next one that are hurt, like these gentlemen, they will have to come all the way down here to get justice. (3893a)
 9a CB & I cannot excuse its failure to object by pointing to the trial court's admonition to counsel not to interrupt the summations of opposing counsel with objections "if it is at all possible." After summation by plaintiffs' attorney, and prior to any other summations, the trial court held a discussion in chambers in which CB & I's trial counsel objected to several comments raised in summation. None of the objections made at that time were to statements pertaining to CB & I's wealth or foreign status, and defense counsel agreed with the trial judge that none of the remarks he did object to were so prejudicial as to warrant a mistrial (3896a).
 
 
 [10]
 While several of the remarks now complained of were not made in connection with the claim for punitive damages, we conclude, after reading the full text of the summations, that those scattered and isolated comments did not constitute plain error
 
 
 [11]
 See the district court decision denying the judgment n. o. v. and a new trial, 379 F.Supp. at 1275, 1276. While CB & I points to several statements by the trial judge during argument on post-trial motions allegedly recognizing prejudice, those statements are ambiguous, since at least one of them seems to be referring to prejudice created by CB & I's trial counsel (4233a-4234a). In any event, the district court's written opinion, which specifically found no prejudice, takes precedence over any prior oral statements by the district judge that are arguably to the contrary
 
 
 [12]
 Hoffman v. Sterling Drug, Inc., 485 F.2d 132, 139 (3d Cir. 1973); Trent v. Atlantic City Electric Co., 334 F.2d 847, 859 (3d Cir. 1964)
 
 
 [13]
 Choy v. Bouchelle, 436 F.2d 319, 325 (3d Cir. 1973); McNello v. John B. Kelly, Inc., 283 F.2d 96, 101-02 (3d Cir. 1960)
 
 
 [14]
 379 F.Supp. at 1273-74
 
 
 [15]
 See, e. g., Maxwell Land Grant Co. v. Dawson, 151 U.S. 586, 606, 14 S.Ct. 458, 38 L.Ed. 279 (1894); Schools v. Risley, 10 Wall. 91, 77 U.S. 91, 114, 19 L.Ed. 850 (1870); McVeigh v. McGurren, 117 F.2d 672, 680 (7th Cir. 1940), cert. denied, 313 U.S. 573, 61 S.Ct. 960, 85 L.Ed. 1531 (1941); Gardner v. Darling Stores Corp., 138 F.Supp. 160, 162 (S.D.N.Y.1956), aff'd, 242 F.2d 3 (2d Cir. 1957)
 We note further that CB & I in its brief states that the charge entirely ignored whether the activity in which Hess engaged CB & I to perform was ultrahazardous within the meaning of § 520 of the Restatement of Torts. Since the personal injury plaintiffs did not pursue that theory at trial, and since CB & I did not request such a charge, we see no error. The Choy-McNello rule, if applicable at all, applies only where the law was insufficiently particularized and related to the evidence in the case. It does not require reversal for failure to charge the jury on a legal theory which was not requested by any of the parties.
 
 
 [16]
 In particular, we reject CB & I's contention that the judgment should be reversed because of a "plan" between Hess and the personal injury plaintiffs to place the entire blame on CB & I. There is nothing in the record indicating any impropriety on the part of counsel for the plaintiffs or Hess, and there is certainly nothing inherently improper in one defendant adopting the trial strategy that the other defendant was solely responsible for the accident