Sharon Lynn GEORGE et al.,
Plaintiffs-Appellants

v.

C. Walter DAVIS, President, School Board of East Feliciana Parish, etc., et al., Defendants-Appellees.

No. 78–1780.

United States Court of Appeals,
Fifth Circuit.

Feb. 16, 1979.

Murphy W. Bell, Baton Rouge, La., for plaintiffs-appellants.

John F. Ward, Jr., Baton Rouge, La., for defendants-appellees.

Before BROWN, Chief Judge, GEE and VANCE, Circuit Judges.

PER CURIAM:

The defendant school board initiated the present proceeding by a motion seeking court approval of proposed new construction and of attendance zone changes in connection with such new construction. The district court granted the motion. On appeal plaintiffs challenge the district court's findings that the proposed changes are justified and will not impede the desegregation process.[1]

East Feliciana Parish is a large, sparsely-populated, farming area located in southeast Louisiana, just south of the Mississippi line. Its overall population is approximately sixty percent black. There are two small population centers in the parish. One is the town of Clinton located in the central portion of the parish, and the other is the town of Jackson located on the west side of the parish. High schools in these towns serve the entire parish. The total population in the Jackson High district has a small white majority, whereas the total population in the Clinton High district is almost two-thirds black. The schools in both districts, however, are predominantly black. Public school attendance in the Jackson High district is 56.2% black and in the Clinton High district it is 77.3% black.[2]

East Feliciana's school system was originally desegregated by a court-ordered plan of 1969. The present proposal by the school board involves replacing two of its older buildings and upgrading and rehabilitating all of its facilities. The proposed changes followed a series of studies by the Louisiana State Department of Education and architects engaged by the school board. The construction program ultimately proposed by the board involves closing the forty year old Clinton Senior High School building, and the Norwood Elementary School building, constructing an entirely new Jackson High School, constructing a major addition to the Clinton Upper Elementary School to make it suitable for use as the Clinton High School, and renovating all of the other buildings in the system.

Along with the upgrading of physical facilities it was proposed that the system be changed to a middle school system. In the Clinton school area it was proposed that Clinton Elementary be changed to serve kindergarten through grade four rather than kindergarten through grade six; that Clinton Junior High serve grades five through eight rather than grades nine through ten; that the newly established high school (utilizing the prior upper elementary facility plus new additions) serve grades nine through twelve. In the Jackson school area it was proposed that the elementary school serve kindergarten through grade four; that the present high school building be used to serve grades five through eight; and that the new high school serve grades nine through twelve. It was proposed that the Norwood Elementary School be closed and that the school zone be

---

1. Plaintiffs also argued that the district court erred in restricting the hearing to the school board's motion. The contention is untenable in light of the record.

At the conclusion of the hearing on February 24, 1978, the following colloquy occurred with respect to the matter now complained of:

MR. BELL: Your Honor, previous counsel for the plaintiffs in this matter filed opposition, and included in there is certain motions by which, I imagine—you could construe it as a motion for further relief. I notice that he did not notice the motion and I just assumed that it was coming up today.

THE COURT: No. I didn't have any of those on the docket today.

I would assume that there may be some objection to the motion to declare this a unitary system and we can combine them at that time, Mr. Bell[.]

MR. BELL: That will be fine.

THE COURT: All right. Court will be at recess.

Having expressly agreed to the procedure followed in the court below; counsel for plaintiffs is in no position to urge error on appeal.

2. The disparity between school attendance and population is due at least in part from so-called "white flight" to private schools.

eliminated and incorporated into the Jackson Elementary School zone. It was also proposed that the Slaughter Elementary School be changed to serve kindergarten through grade six rather than kindergarten through grade eight and that grades seven and eight be shifted to the new Jackson Middle School. The last change involved relocation of the zone line in the Slaughter area, which would shift 63 black and 52 white students to the Jackson zone from the Clinton zone.

For the most part the plaintiffs' complaint is a generalized claim that the school board has failed to meet its burden of proof. To the extent that the plaintiffs complain of specific matters, they seem to focus on two issues. First, they object to construction of an all new high school facility in Jackson, which has a larger white minority than does Clinton; and second, they argue that shifting students from the Slaughter district into Jackson increases the size of the white minority as compared to that in the Clinton area.

In general, the oldest facilities in the parish are located in the Jackson area. The present Jackson High School was built in 1932. The Clinton facilities tend to be somewhat newer. The upper elementary building, which is to be used as part of the new high school facility, was built in 1960. It is located on twenty-seven acres of land and has a gymnasium, track, football field and stadium already in place.

The amounts of money to be spent in the two areas are unequal because of differences in the scope of the required work, but are in the same general range. The new Jackson High School is projected to cost $2,916,990 and the total of all work in the Jackson district will cost $3,232,390. The addition and rehabilitation at the Clinton Upper Elementary facility, which will become the Clinton High School, is projected to cost $1,859,421 and the total of all work in that district $2,413,340. The trial court made a specific finding that: "I find that, as a fact, the plan as proposed does guarantee that comparable facilities will result." This finding is more than amply supported by the evidence.

Detailed attendance figures at every school were before the court so that the proposed changes, including the shifts from the Norwood school zone and the Slaughter school zone into the Jackson school zone, could be accurately assessed by the trial court. Contrary to plaintiffs' contention, the record establishes that the Slaughter students who are to be shifted to Jackson are predominantly black. In addition, the Norwood students who also are to be shifted to Jackson were overwhelmingly black. The trial court's finding was as follows:

I certainly find nothing in the figures presented to the court today that would in any way indicate that the ratio of whites to blacks in these schools will be substantially affected by these changes. As a matter of fact, I believe that a close examination of them will show that there is a greater possibility that the amount of actual integration in these schools, taken as a whole, may well be greater than it is now.

The importance of the question now before the court was emphasized by the Supreme Court in *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971) where it was stated:

The construction of new schools and the closing of old ones are two of the most important functions of local school authorities and also two of the most complex.

. . . In devising remedies where legally imposed segregation has been established, it is the responsibility of local authorities and district courts to see to it that future school construction and abandonment are not used and do not serve to perpetuate or re-establish the dual system.

*Id.* at 20, 21, 91 S.Ct. at 1278. This holding had been forecast accurately in *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211, 1218 (5th Cir. 1969), *vacated as to Nos. 28340, 28342*, 396 U.S. 226, 90

S.Ct. 467, 24 L.Ed.2d 382 (1969); *reversed as to Nos. 26285, 28340*, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970); *cert. denied as to Nos. 26285, 28340*, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 530 (1970); *cert. denied as to No. 27863*, 402 U.S. 944, 91 S.Ct. 1611, 29 L.Ed.2d 112 (1971), wherein this court required that,

> All school construction . . . in the system shall be done in a manner which will prevent the recurrence of the dual school system once this desegregation plan is implemented.

■ The task of the courts in devising and thereafter reappraising constitutional remedies, however, does not require that it engage in second guessing every racially neutral decision of local authorities. It was also recognized in *Swann* that, "Remedial judicial authority does not put judges automatically in the shoes of school authorities whose powers are plenary. Judicial authority enters only when local authority defaults." *Swann v. Charlotte-Mecklenburg Board of Education, supra*, 402 U.S. at 16, 91 S.Ct. at 1276.

Plaintiffs argue that the burden of proof was improperly placed on them by the district court. The basis of the argument was the extraction of remarks by the trial judge out of context. A review of the entire record makes it abundantly clear that the burden was correctly placed. At the outset of the hearing and as a part of his findings the trial judge made express statements that the burden was on the school board to justify the proposals being advanced.

■ Recognition of this type of question's importance does not alter our role on appeal, which is neither to usurp the school board's authority nor to make initial findings of fact. The scope of our review is limited to whether the trial court's decision was clearly erroneous. *Lee v. Russell County Board of Education*, 563 F.2d 1159 (5th Cir. 1977). Because the record before us amply supports the findings of the district court its decision must be affirmed.

AFFIRMED.

\* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 431 F.2d 409, Part I.