**In re RANDY HOMES CORPORATION,**
**Debtor.**

**Bankruptcy No. 87–2103–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 3, 1988.

Joel Truehaft, Gordon Schiff, for Randy Homes, Corp.

L. Segall, Tampa, Fla., for Gene Mason.

## ORDER ON MOTION FOR SANCTIONS AND ATTORNEYS' FEES

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on for consideration upon the Motion for Sanctions and Attorneys' Fees filed by the Debtor against Gene Mason (Mason) for an alleged violation of the automatic stay. The Court reviewed the Motion and the record and heard arguments of counsel and finds the undisputed and relevant facts to be as follows:

On March 4, 1987, the Debtor, Randy Homes Corporation (Debtor), along with Delores M. Crumpton, Randyl M. Crumpton and Melissa B. Crumpton as sellers, entered into a Contract for Sale of Real Estate with one Gene Mason as buyer. The property to be sold is known as the Indian Mound property which was already the subject of a foreclosure action filed by the holder of the first mortgage, Elliott Greenbaum, pending in the Circuit Court of Hillsborough County, Florida, styled *Elliott M. Greenbaum v. Randy Homes Corporation, et al,* Case No. 86–22143. On March 17, 1987, the Circuit Court entered a Final Summary Judgment of Foreclosure in favor of Mr. Greenbaum scheduling a foreclosure sale for April 21, 1987, at 11:00 A.M.

Based on the March 4, 1987, Contract for Sale, on April 20, 1987, Mason filed a complaint for specific performance in the Circuit Court of Hillsborough County, Florida, Case No. 87–6844. On the same date, Mason recorded a lis pendens on the Indian Mound property.

On April 20, 1987, Delores Crumpton, Randyl Crumpton, Melissa Crumpton, and Randy Homes Corporation entered into a Contract for Sale of Real Estate with one Barbara W. Larkin for the sale of the Indian Mound Property.

Two minutes prior to the scheduled Greenbaum foreclosure sale on April 21, 1987, the Debtor filed its Petition for Relief under Chapter 11 of the Bankruptcy Code. Mason's lawsuit for specific performance of the Contract for Sale was, of course, stayed pursuant to Section 362 of the Bankruptcy Code.

On May 7, 1987, the Debtor filed with the clerk of the Bankruptcy Court a Notice of Intent to Sell the Indian Mound property to Larkin. On May 8, 1987, this Court heard and granted the Debtor's Motion to Reject the contract between the Debtor and Mason. Since this Court granted the Debtor's Motion to Reject the contract, the Debtor moved to dismiss Mason's complaint in the Circuit Court.

On June 15, 1987, the Circuit Court entered an Order dismissing the Complaint without prejudice and dissolving the Lis

Pendens with prejudice. In the meantime, the Debtor scheduled a closing for the sale of the Indian Mound property for June 15, 1987. However, due to the Circuit Court's order dismissing Mason's Complaint without prejudice, the closing did not take place, because Mason could again file the Complaint for specific performance of the Contract for Sale of the Indian Mound Property and Larkin, the Buyer, felt that the Debtor could not deliver marketable title.

Larkin's premonition was correct. On June 25, 1987, Mason in fact filed an Amended Complaint again seeking specific performance of the Contract for Sale and recorded an Amended Notice of Lis Pendens. It should be noted that the contract to sell the property to Mason was already rejected by the Debtor and its Motion to Reject was approved by this Court with the entry of an Order on June 4, 1987. On June 26, 1987, the Debtor filed a Motion to Dismiss Mason's Amended Complaint as frivolous.

On July 6, 1987, the Circuit Court entered an Order which vacated all previous orders. The effect of this was, of course, that the original Complaint and the original Lis Pendens were reinstated. As a result, the sale of the Indian Mound property to Larkin never closed, in fact the Debtors Contract for Sale with Larkin expired on July 20, 1987, by its own terms.

On August 20, 1987, the Debtor entered into a contract for sale of the subject property with Fleet Street, Inc., for a purchase price of $281,909.50 cash. However, because the foreclosure sale pursuant to the Greenbaum Final Summary Judgment of Foreclosure was held on September 22, 1987, the successful bidder at the sale was Barbara W. Larkin who purchased the property for $260,000.00.

On September 30, 1987, prior to the expiration of the redemption period, this Court granted the Debtor's Emergency Motion to Sell Property Free and Clear of All Liens and to Disburse Monies at Closing relative to the Fleet Street, Inc., contract. On October 2, 1987, the Debtor redeemed the property and closed on the sale of the Indian Mound property to Fleet Street, Inc., for the purchase price of $281,909.50 cash.

Based on the foregoing, it is the Debtor's contention that Mason's filing of the Amended Complaint and Lis Pendens after the commencement of this case was a violation of the automatic stay because Mason never got relief from the automatic stay from this Court.

In opposition, Mason argues that there was no violation of the automatic stay. He maintains that the state court law suit was pending at the time the Debtor filed Chapter 11 and that Circuit Court Judge Miller had ordered Mason to file an Amended Complaint within ten (10) days. This argument borders on the absurd. Mason filed his Amended Complaint in State Court with full knowledge of the Debtor's pending bankruptcy case, and thus clearly violated the automatic stay imposed by the Bankruptcy Code.

Section 362(a) of the Bankruptcy Code provides in relevant part,

... a petition filed ... operates as a stay ... of–(1) the commencement or continuation, of a judicial ... proceeding against the debtor that was or could have been commenced before the commencement of the case under this title ...

In an effort to justify the obvious violation of the automatic stay, Mason urges that he was under compulsion by the State Court to file his Amended Complaint if he wanted to preserve the rights he attempted to assert in his Complaint for specific performance and to preserve the legal effectiveness of his lis pendens. This is an unacceptable defense to the violation of the automatic stay for the following reasons. The Amended Complaint filed after the commencement of the Bankruptcy case sought specific performance of an executory contract which had already been rejected by the Debtor, with the approval of this Court, thus this claim for specific performance was patently spurious. Moreover, assuming without admitting that such claim could still be asserted in spite of the rejection of the contract which Mason sought to enforce, all Mason had to do was

file a Motion and obtain relief from the automatic stay from this Court.

■ This leaves for consideration the appropriate sanctions to be imposed on Mason pursuant to § 362(h) of the Bankruptcy Code for violation of the automatic stay.

Section 362(h) of the Bankruptcy Code provides,

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages.

It is now well established that the literal language of § 362(h) does not prevent a corporate debtor from recovering damages when it has been injured by a willful violation of the automatic stay. *See Budget Service Company v. Better Homes of Virginia, Inc.*, 804 F.2d 289 (4th Cir.1986), *In re Tel–A–Communications Consultants, Inc.*, 50 B.R. 250 (Bankr.Conn.1985). Any other result would be contrary to the intent and purpose of § 362 as a whole. As is stated in the legislative history:

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harrassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him in to bankruptcy.

*H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 54, 55 (1978), reprinted in U.S. Code Cong. & Admin.News 1978, pp. 5787, 5840, 6296–6297.*

It is the contention of the Debtor that it should be entitled to recover consequential damages resulting from the failure to close on the Contract for Sale of Real Property with Barbara Larkin on June 15, 1987, in addition to punitive damages, and attorneys' fees and costs.

The Debtor's claim for damages based on its inability to close the sale to Larkin on June 15, 1987, is without merit. As noted earlier the suit for specific performance filed by Mason was dismissed by the Circuit Court which also dissolved the Lis Pendens thus on the date of closing there was actually no lawsuit pending albeit with the possibility of reinstatement. Be that as it may, however, the June 15 closing did not occur because of any action taken by Mason post-petition, but because of the apprehension of Larkin and her reluctance to proceed with the closing. However, there is no question that Mason did file an Amended Complaint and Amended Lis Pendens post-petition which generated numerous hearings and proceedings before this Court and in turn forced the Debtor to utilize the services of counsel to defend the Debtor's rights protected by the automatic stay imposed by § 362 of the Bankruptcy Code, rights which were clearly violated by Mason.

■ Based on the foregoing this Court is satisfied that the Debtor is entitled to be compensated for its costs and for attorney's fees but under the facts of this case, not to any award of punitive damages. Both the Debtor's counsel of record, Joel Treuhaft, and special counsel to the Debtor, Gordon Schiff, have filed fee applications setting forth fees and costs incurred in connection with the litigation with Mason after June 15, 1987, and the Motion under consideration. The Court has considered the fee application of Mr. Treuhaft and finds that for the period of June 29, 1987,—October 14, 1987, Mr. Treuhaft requests compensation for fees in the amount of $7,156.25 and costs in the amount $681.26. Mr. Schiff seeks compensation for fees in the amount of $5,062.00 and costs in the amount of $131.58 for the time period of May 26, 1987—September 23, 1987. It should be noted that the application to employ Mr. Schiff was not filed until August 19, 1987, and no Order was entered authorizing his employment until September 11, 1987. Therefore, Mr. Schiff should not be entitled to compensation for fees and costs incurred prior to September 11, 1987. Based on the services rendered by Mr. Treuhaft, this Court is satisfied that $3,500.00 is a reasonable fee for Mr. Treuhaft's representation of the Debtor, and

that $750.00 is a reasonable fee for Mr. Schiff's representation of the Debtor. Further, this Court finds that Mr. Treuhaft should be awarded $682.63 and Mr. Shiff should be awarded $0.00 for reimbursement of costs expended in connection with the Mason matter.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Sanctions and Attorneys' Fees be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that Larry Segall of Straske, Farfante, Segall & Arcuri, P.A., and Gene Mason, jointly and severally, be, and are hereby, directed to remit the total sum of $750.00 to Mr. Schiff and $4,182.63 to Mr. Treuhaft within 30 days of the date of this Order. It is further

ORDERED, ADJUDGED AND DECREED that in the event Mr. Segall and/or Mr. Mason fail to pay Mr. Schiff and Mr. Treuhaft these sums within 30 days of the date of this Order, this Court will consider entry of an additional appropriate Order in this proceeding.