**In re Gale Ann SANSONE, faw Kokua Management, Inc., Debtor.**

**Gale Ann SANSONE, Plaintiff,**

**v.**

**Jeffrey P. WALSWORTH; James R. Wooley; Daniel Sigler; William Fagan; and Gordon H. Grannis, Defendants.**

**Bankruptcy No. SAX 87–00075 JR.**
**Adv. No. SA 87–0729 JR.**

United States Bankruptcy Court,
C.D. California.

May 15, 1989.

a complaint seeking the recovery of compensatory and punitive damages under 11 U.S.C. § 362(h), (unless otherwise indicated, all citations are to 11 U.S.Code) alleging that during the pendency of her bankruptcy proceeding, defendants, who knew of her Chapter 13 case, willfully violated the automatic stay, provided by § 362(a), by commencing or continuing state court civil litigation against her.

## JURISDICTIONAL STATEMENT

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges of the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), which the court may hear and determine. *Budget Serv. Co. v. Better Homes of Va., Inc.*, 804 F.2d 289 (4th Cir.1986). Further authority that the bankruptcy court may hear and decide matters under § 362(h) is found under 28 U.S.C. § 157(b)(2)(G). *In Re Zumbrun*, 88 B.R. 250 (9th Cir. BAP 1988).

## FACTS

Debtor and Michael Sansone, her non-debtor husband, were the managing and operating partners of the Irvine Health Center from 1982 through 1987. In or about 1983, Sansone formed Kokua Management, Inc., to carry out the management of the Irvine Health Center. James R. Wooley (hereinafter referred to as Wooley), Daniel Sigler (hereinafter referred to as Sigler), William Fagan (hereinafter referred to as Fagan), and Gordon H. Grannis (hereinafter referred to as Grannis), were, at times prior to the bankruptcy, chiropractors rendering services at the Irvine Health Center facility.

William Miles Burd, Santa Ana, Cal., for plaintiff.

Terrance J. Shannon, Santa Ana, Cal., Michael A. Hearn, Orange, Cal., for defendants.

## MEMORANDUM OPINION

LYNNE RIDDLE, Bankruptcy Judge.

Plaintiff Gale Ann Sansone (hereinafter referred to as Sansone or the debtor) filed

In 1985, Sigler, by his attorney Jeffrey P. Walsworth, Esq. (hereinafter referred to as Walsworth), filed an action in Orange County Superior Court (Sigler Action) against debtor and Kokua Management, Inc., alleging wrongful withholding of monies and other related claims.

On January 7, 1987, Sansone filed a bankruptcy petition under Chapter 13 of Title 11 U.S.Code. Walsworth and Sigler were listed in debtor's schedules and notified of the bankruptcy filing. On January 28, 1987, Walsworth, on Sigler's behalf, filed a proof of claim for $30,000. Debtor's plan, proposing to pay 100% to all unsecured creditors, was confirmed on March 30, 1987, over Sigler's objection. Thereafter debtor filed an objection to Sigler's claim.

On August 31, 1987, Walsworth's firm filed a "Notice of Withdrawal of Claim," which purported to effect by its filing such withdrawal. On September 16, 1987, following noticed hearing at which neither Walsworth nor Sigler appeared, debtor's objection was sustained and an order disallowing Sigler's claim was entered; the order, however, allowed Sigler ten days in which to file an amended claim. A copy of the order was served on Sigler and Walsworth by the clerk of the court. Sigler never filed an amended claim.

On July 22, 1987, while the bankruptcy was pending, debtor filed a complaint for breach of contract against Wooley, Fagan, and Grannis in Orange County Superior Court (Sansone Action) by which debtor sought to recover monies she claimed owing to the bankruptcy estate. In response to the complaint, on or about September 11, 1987, and while her bankruptcy was pending, Wooley, Fagan, and Grannis, by their attorney Walsworth, filed an answer and a cross-complaint seeking the recovery of money damages against debtor. The cross-complaint generally states that in and after 1985, and while she was managing Irvine Health Center, debtor failed to tender a lawsuit, naming Wooley, Fagan and Grannis as defendants, to an insurer, State Farm Fire and Casualty Co. (hereinafter referred to as State Farm), for their defense. It further alleges that she later breached her duty to them by failing to hire competent counsel to defend against the action.

On October 15, 1987, William M. Burd, Esq. (hereinafter referred to as Burd), counsel for debtor in the bankruptcy proceeding, made written demand on Walsworth to dismiss the Sansone Action cross-complaint asserting, with citation to appropriate Bankruptcy Code authority, that such filing was a violation of the automatic stay provided under § 362. Walsworth responded by letter dated October 22, 1987, that debtor had initiated the action against his clients and that the pleading he filed was "compulsory" under state law. Walsworth further justified the filing by stating that in his opinion actions brought for damages based upon post-petition conduct of a debtor are not stayed by a bankruptcy proceeding.

On October 30, 1987, Burd again made written demand that Walsworth dismiss the cross-complaint. He further informed Walsworth that in the event the action was not dismissed an adversary proceeding would be commenced against him and his clients in the bankruptcy court under § 362(h) for the recovery of Sansone's costs, attorneys' fees and for punitive damages. Walsworth, however, failed and refused to dismiss the cross-complaint.

On November 4, 1987, and while debtor's bankruptcy proceeding was still pending, Walsworth on behalf of Wooley, Grannis and Sigler filed a second post-petition state court cross-complaint against debtor; this time in the pending 1985 state court Sigler Action. The allegations of that pleading were, word for word, identical to those in the Sansone Action cross-complaint filed just two months earlier except for the addition of a third cause of action on behalf of Sigler.

On November 30, 1987, debtor filed a complaint in the bankruptcy court under § 362(h) against Walsworth, Wooley, Sigler, Fagan, and Grannis for the violation of the automatic stay based on the filing of the two cross-complaints.

On December 16, 1987, a request for dismissal of the state court cross-complaint was filed by an attorney other than Walsworth on behalf of Sigler. During July of 1988, requests for dismissal of the state court cross-complaints were filed by attorneys other than Walsworth on behalf of Fagan and Grannis.

Prior to trial defendants Wooley, Fagan and Grannis reached settlements with the debtor and were dismissed.

At trial defendants Walsworth and Sigler denied that the filing of the cross-complaints constituted a willful violation of the automatic stay because, the cross-complaints (1) were never served, (2) were "compulsory" under the California Code of Civil Procedure, and (3) sought recovery of damages based only upon debtor's post-petition conduct. Additionally, they argue that even if they did violate the stay, it was not intentional.

## DISCUSSION

Under Bankruptcy Code § 362(a)(1) a stay against the commencement or continuation of virtually all judicial proceedings against the debtor goes into effect automatically at the time a bankruptcy petition is filed. *In re Willard*, 15 B.R. 898, 900 (9th Cir. BAP 1981). A party in interest may, for cause, request by noticed hearing relief from the stay to pursue state court litigation. § 362(d)(1).

The automatic stay is the fundamental protection provided to debtors by the bankruptcy code. It gives debtors a breathing spell from creditors. It stops all collection efforts, harassment, and foreclosure actions. It permits debtors to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove them into bankruptcy (House Report. No. 95-595, 95th Cong., 1st Sess. 340-2 (1977); Senate Report No. 95-989, 95th Cong., 2d 54-55 (1978); reprinted in 1978 U.S.Code Cong. & Ad.News at 5787, 5840-41 and 6296-97. Congress intended the automatic stay to be broad in scope to protect both debtor and creditors from a piecemeal dismemberment of the debtor's estate. "Judicial toleration of an alterna-

tive procedure of self-help and post hoc justification would defeat the purpose of the automatic stay." *In Re Computer Communications, Inc.*, 824 F.2d 725, 731 (9th Cir.1987).

A party who initiates or continues pending litigation against a debtor without relief from stay and prior to the granting of the debtor's discharge takes a considerable risk because § 362(h) provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." *See Mercer v. D.E.F., Inc.*, 48 B.R. 562, 565 (Bankr.Minn.1985).

When Walsworth and Sigler filed their state court cross-complaints they commenced judicial proceedings against Sansone, who at the time was protected by the automatic stay. The filing of the cross-complaints were violations of § 362(a). *See, e.g., In Re NWFX, Inc.*, 81 B.R. 500, 504 (Bankr.W.D.Ark.1987) (filing of third party complaint); *In Re Randy Homes Corp.*, 84 B.R. 799, 801-02 (Bankr.M.D.Fla. 1988) (post-petition amendment of a pending state court complaint); *In Re Houchens*, 85 B.R. 152, 154-55 (Bankr.N.D.Fla. 1988) (post-petition inclusion of a prayer for deficiency damages in a state court lien foreclosure action).

However, notwithstanding the violation of the stay, for such breach to be compensable the Court must find that the Walsworth and Sigler violations were "willful."

## RECOVERY OF DAMAGES UNDER SECTION 362(h)

"A willful violation of the automatic stay provision is.... committed when a party acts in violation of the stay with knowledge or notice of sufficient facts to cause a reasonably prudent person to make additional inquiry to determine whether a bankruptcy petition has been filed." *In Re Stucka*, 77 B.R. 777, 783 (Bankr.C.D.Cal. 1987) (citation omitted). Moreover, the Ninth Circuit Bankruptcy Appellate Panel and other courts have held that knowledge of the bankruptcy filing is the legal equiva-

lent of knowledge of the automatic stay provided under § 362. *In Re Zartun*, 30 B.R. 543, 546 (9th Cir. BAP 1983); *In Re NWFX, Inc.*, 81 B.R. 500, 503 (Bankr.W.D. Ark.1987); *In Re Wagner*, 74 B.R. 898, 904 (Bankr.E.D.Pa.1987).

> 'Willful' is a word 'of many meanings, its construction [is] often influenced by its context.' *Screws v. United States*, 325 U.S. 91, 101, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495 (1945). There is no legislative history on what Congress intended 'willful' to mean in the context of § 362(h). The courts have generally interpreted it to require 'intentional or deliberate' conduct. *See, In Re Tel–A–Communications Consultants, Inc.*, 50 B.R. 250, 254 (Bankr.Conn.1985), *cited with approval in, Budget Serv. Co. v. Better Homes of Va., Inc.*, 804 F.2d 289, 292 (4th Cir. 1986).

*In Re Shealy*, 90 B.R. 176, 179 (Bankr.W. D.N.C.1988); *see also In Re Skinner*, 90 B.R. 470, 474 (D.Utah 1988); *In Re Advanced Professional Home Health Care, Inc.*, 82 B.R. 837, 844 (Bankr.E.D.Mich. 1988); *In Re Mullarkey*, 81 B.R. 280, 284 (Bankr.N.J.1987); *In Re Rinehart*, 76 B.R. 746, 756 (Bankr.S.D.1987) *aff'd*, 88 B.R. 1014 (D.S.D.1988); *In Re Shafer*, 63 B.R. 194, 198 (Bankr.Kan.1986); *In Re Mewes*, 58 B.R. 124, 128 (Bankr.S.D.1986). Other courts have added that "the willfulness requirement refers to the deliberateness of the conduct and the knowledge of the bankruptcy filing, *not to a specific intent to violate a court order." In Re Wagner*, 74 B.R. 898, 903 (Bankr.E.D.Pa.1987) (emphasis added); *see also In Re Falls Bldg., Ltd.*, 94 B.R. 471, 481–82 (Bankr.M.D.Tenn. 1988).

" '[W]illfulness' can be established by inaction when it amounts to a reckless disregard of the § 362 stay. *See, Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126–27, 105 S.Ct. 613, 624–25, 83 L.Ed. 2d 523 (1985) (definition of 'willful' as used in Age Discrimination in Employment Act case)." *In Re Shealy*, 90 B.R. 176, 179–80 (Bankr.W.D.N.C.1988).

As their first legal defense defendants argue that there was no violation of the stay because the cross-complaints, while filed, were never served upon debtor. This claim is meritless. Under *Cal.Code Civ. Proc.* § 428.60, where a party has appeared in an action, which debtor had in both matters, proper service is made by mailing a copy of the pleading to the party's attorney. It was established at trial that the cross-complaints each had attached to them executed proofs of service showing service by mail upon debtor's state court attorney, William R. Anderson (hereinafter referred to as Anderson). Additionally, Anderson testified that he received the served cross-complaints.

Defendants' second legal defense is that the filings were not stayed by § 362 because, as Walsworth claimed in his October 22, 1987, letter to Burd, "a cross-complaint is a compulsory action." And further, even if the filings were technically a violation of the stay, the argument goes, they should not be liable for a "willful" violation since defendants were compelled by state law to file them.

Under California law, if a party against whom a complaint has been filed fails to allege by cross-complaint any "related cause of action" he or she may have against the plaintiff, that party is thereafter precluded from asserting such claim in any other action. *Cal.Code Civ.Proc.* §§ 426.10–.70 (West 1989). Walsworth and Sigler are in error in alleging that the cross-complaints were "compulsory." Initially, with regard to the Sigler cause, *Cal. Code Civ.Proc.* § 426.30(a) (read together with *Cal.Code Civ.Proc.* § 426.10(c)) makes clear that a cross-complaint is only "compulsory" if the cause to be pled arises out of the same transaction or occurrence as the cause of action the plaintiff alleges in his complaint. The Court does not find that Sigler's cause for defamation arose out of the "same transaction or occurrence." Second, neither the Sigler, Wooley, Fagan or Grannis causes were compulsory because under *Cal.Code Civ.Proc.* § 426.40(b) the state court action was pending in a court which was "prohibited by ... federal ... statute from entertaining the cause of action ...," i.e., § 362 had stayed the action.

If defendants' cross-complaints could not be filed as "compulsory," this would not mean, as the defendants contended at trial, that by virtue of the Sansone bankruptcy they were left without any legal forum to test whether their cross-complaints were proper and should be permitted to be filed. Assuming *arguendo*, the subject matter of the cross-complaints made them compulsory under state law, which again the Court does not find, both state law and the Bankruptcy Code provided them with procedures to test their question without *first* violating the stay. Prior to the filing of the cross-complaints Walsworth could have (1) sought a state court extension of time to file his "compulsory" pleadings based upon his doubt as to the applicability of § 362(a), and/or (2) sought relief from stay from the bankruptcy court. Walsworth did neither of these things. *See In Re Randy Homes Corp.*, 84 B.R. 799, 801–02 (Bankr.M.D.Fla. 1988) (argument that § 362(h) violation is excused where act was "compelled" by a state court summarily dismissed because all defendant had to do was file a motion and obtain relief from stay). *See also In Re Pro Football Weekly, Inc.*, 60 B.R. 824 (D.C.N.D.Ill.1986) (holding, under specific facts, that it was an abuse of discretion for the bankruptcy court to deny relief from stay to permit the filing of a counterclaim against debtor in a district court action).

Finally, *Cal.Code Civ.Proc.* § 426.50 provides an explicit mechanism for obtaining leave to file an untimely cross-complaint. The section concludes by stating "[t]his subdivision shall be liberally construed to avoid forfeiture of causes of action."

The defendants third legal defense is that their cross-complaints were for damages arising out of post-petition conduct. This contention, however, lacks both merit and credibility. The first cross-complaint filed by Walsworth for Wooley, Fagan and Grannis claims a right to damages based upon allegations that at some time in 1985 (prior to the January 1987 filing of her bankruptcy petition) debtor, by virtue of her management of the Irvine Health Center, breached duties she owed them to (1) tender a lawsuit against them to their insurance company for defense, and (2) re-

tain competent legal counsel. Walsworth's inclusion of the phrase "and to and including the date of this cross-complaint" to allegations of 1985 conduct does not create a postpetition obligation. The alleged breach (or tort) occurred in 1985, and therefore if proved, the wrong created a pre-petition obligation.

The second cross-complaint reiterates verbatim the previous Wooley and Grannis cross-complaints, then adds a new cause of action for defamation by Sigler against debtor. Even so, it suffers the same problem. The third cause begins by alleging that "[a]bout May 1985, and continuing regularly to the present day, [Sansone] began making ... defamatory oral statements." The Court finds nothing in the pleading, however, which specifically sets forth or describes any post-petition publication or communication about Sigler by Sansone. And the fact that this third cause was added to a verbatim reiteration of the first Wooley and Grannis cross-complaint relating to 1985 conduct, which also adds to the allegations an "and to the present ..." phrase, persuades me that the argument was invented just prior to trial. Moreover, inasmuch as Sansone, Walsworth and Sigler had been locked in vicious state court combat for approximately two years prior to the filing of the cross-complaints, it simply defies logic and belief that defendants would wait two years to set forth allegations of defamation which began in 1985.

Lastly, the Court notes that Walsworth was not, after being forewarned by Burd's letters of the stay violation following the filing of the first cross-complaint, without a remedy. Walsworth could easily have included in the second cross-complaint factual allegations to both the Sigler and Wooley/Grannis causes which made it absolutely clear that he was aware of the bankruptcy, aware of the stay, and was pleading and seeking recovery on account of conduct which occurred only after the filing of the petition. He did none of these. For all the foregoing reasons the Court finds this defense unpersuasive.

As a final defense Walsworth and Sigler argued that if they did violate the stay they

should not be punished because it was not intentional. Not even a "good faith" mistake of law or a "legitimate dispute" as to legal rights relieve a willful violator of the consequences of the act. *In Re AM Int'l, Inc.,* 46 B.R. 566, 577 (Bankr.M.D.Tenn. 1985); *In Re Mullarkey,* 81 B.R. 280, 284 (Bankr.N.J.1987); *see also In Re Bragg,* 56 B.R. 46, 50 (Bankr.M.D.Ala.1985) (the [defendant] can be excused for an act committed in ignorance of fact; however, ignorance of the law is no excuse); *In Re Elegant Concepts, Ltd.,* 67 B.R. 914, 920 (Bankr.E.D.N.Y.1986) (lawyer charged with knowledge of the protection that the bankruptcy law afforded a debtor); *In Re Watson,* 78 B.R. 267, 271 (Bankr.C.D.Cal.1987) (self-inflicted ignorance is no excuse.)

The Court finds the defendants' violation of the automatic stay to be "willful"; the acts of Walsworth were deliberate and intentional. The acts of Walsworth are imputed to Sigler. *Haile v. N.Y. State Higher Educ. Servs. Corp.,* 90 B.R. 51, 55 (Bankr.W.D.N.Y.1988); *In Re Allen,* 83 B.R. 678, 681 (Bankr.E.D.Mo.1988); *In Re Santa Rosa Truck Stop, Inc.,* 74 B.R. 641, 643 (Bankr.N.D.Fla.1987). Even if Walsworth did not "believe" that the filing of the cross-complaints were the commencement or continuation of judicial proceedings against debtor, as an attorney who voluntarily elected to represent Sigler in the United States Bankruptcy Court, he had an affirmative duty to either verse himself in bankruptcy practice, contact bankruptcy counsel to be advised of the legal consequences of his actions, or substitute or associate with counsel familiar with bankruptcy practice. Those are the duties of competent and ethical counsel, and Walsworth's conduct in this action was neither. (*See* A.B.A.Code of Professional Responsibility DR 6–101 providing that a lawyer shall not handle a matter which he knows or should know that he is not competent to handle; *see also* A.B.A. Model Rule 1.1.).

As a result of Walsworth and Sigler's actions, as between their acts and the financial burden placed upon an innocent debtor who is already laboring under the stress of periodic payments under a Chapter 13 plan, Walsworth and Sigler should pay the costs incurred in defending the rights the automatic stay afford. "An award of attorney's fees is appropriate where an initial violation of the stay is followed by Debtor's having to resort to the courts to enforce his rights. *In re Shriver,* 46 B.R. 626, 629–30 (Bankr.N.D. Ohio 1985)." *Matter of Davis,* 74 B.R. 406, 411 (Bankr.N.D.Ohio 1987). Additionally, "[b]y using the words '*shall* recover,' Congress intended that the award of actual damages, costs and attorneys' fees is *mandatory and not within the discretion of the Court. See, e.g., Rodriguez v. Compass Shipping Co.,* 451 U.S. 596, 602, 101 S.Ct. 1945, 1952, 68 L.Ed.2d 472 (1981)." *In Re Inslaw,* 83 B.R. 89, 165 (Bankr.D.C. 1988) (emphasis added); *see also In Re Mullarkey,* 81 B.R. 280, 284 (Bankr.N.J. 1987).

Based upon the foregoing, the Court finds Sigler and Walsworth liable to debtor for her actual damages, including her attorney's fees and costs. Inasmuch as Walsworth filed two cross-complaints on behalf of six defendants, only one of which was Sigler, the award is to be allocated ⅙th to be paid jointly and severally by Walsworth and Sigler, and ⅚ths of the award to be paid by Walsworth separately.

## PUNITIVE DAMAGES UNDER SECTION 362(h)

■ Having resolved the matter of whether a "willful" violation occurred, the question remains whether Walsworth's actions were simple misunderstandings of the law and/or his duty under them? Or alternatively was Walsworth's conduct malicious?

Punitive damages are not intended to compensate an injured party; they are by definition meant to punish wrongful action which was intentional or malicious, and to deter the wrongdoer or others from similar conduct. *City of Newport v. Facts Concerts, Inc.,* 453 U.S. 247, 266–67, 101 S.Ct. 2748, 2759, 69 L.Ed.2d 616 (1981), citing Restatement (Second) of Torts § 908 (1979). Traditionally, punitive damages may be awarded only if in injuring plaintiff, defen-

dant's conduct was malicious (including ill will or spite), or wanton (including reckless indifference or callous disregard for the rights of another), or oppressive (including misuse or abuse of authority or power). *Shuman v. Standard Oil Co. of Cal.,* 453 F.Supp. 1150, 1154 fn. 2 (N.D.Cal.1978).

Under § 362(h) bankruptcy courts have awarded punitive damages where the violation of the stay was characterized or described in the following ways: (1) as wrongful, with a high degree of malice and taken with "conscious disregard" of the stay, *In Re Kroh Bros. Dev. Co.,* 91 B.R. 525, 537 (Bankr.W.D.Mo.1988) (defendant's officers, both attorneys, and with actual knowledge of the bankruptcy proceeding, filed a state court action for declaratory relief); (2) as emanating from an attitude of disdain for "legal technicalities" and accompanied by threats and "bluffs," *Matter of Nat'l Marine Sales and Leasing, Inc.,* 79 B.R. 442, 448–49 (Bankr.W.D.Mo.1987) (knowing of the bankruptcy filing, real property lessor came onto debtor's business property and demanded employees vacate the premises telling them he would do "whatever was necessary" to eject them); (3) as "violent and unwarranted behavior," *Budget Serv. Co. v. Better Homes of Va., Inc.,* 804 F.2d 289, 292–93 (4th Cir.1986) (after receiving notice of the bankruptcy and being informed by debtor's attorney of the automatic stay the lessor of trucks repossessed the vehicles using a shot gun and thereafter blocking the drive to prevent debtor's employees from getting to their jobs); (4) as accompanied by a deliberate and arrogant defiance of federal law, *In Re Tel–A–Communications Consultants, Inc.,* 50 B.R. 250, 255 (Bankr.Conn. 1985) (defendant vehicle lessor, informed of the bankruptcy stay by debtor's attorney, repossessed debtor's vehicles stating that his violation of § 362 was not "willful," it was justified, because debtor/lessee failed to pay rent; however, court found ample basis to award punitive damages because of a rather profane expletive attributed to defendant's president showing he had little regard for the authority of bankruptcy law); and (5) as an "egregious scenario," *Mercer v. D.E.F., Inc.,* 48 B.R. 562, 565

(Bankr.Minn.1985) (renter of stereo, with knowledge of single-parent debtor's bankruptcy, sent two employees to debtor's apartment and, despite the fact that they could see debtor's three unattended children were frightened, they pounded and kicked on the door until the children opened it, whereupon the men entered the premises and repossessed the stereo).

A case similar to the one at bar is *In re Elegant Concepts, Ltd.,* 67 B.R. 914 (Bankr.E.D.N.Y.1986), where an offending attorney attempted to excuse deplorable conduct by claiming ignorance of the law. The *Elegant Concepts* court awarded punitive damages based on findings of "aggravated circumstances," including, that with knowledge of debtor's bankruptcy, defendant's attorney not only filed a civil action but persisted in the violation by failing to rectify the violation. *Id.* at 921. The offending attorney claimed she *had* to file the state court action because the statute of limitations was about to expire. She also stated that the breach was not willful and that she would immediately dismiss the state court action, which she never did. The Court found that it simply could not believe the attorney, and further concluded that the attorney had made a false denial to the Court regarding knowledge of the bankruptcy. *Id.* at 920–21.

Throughout the course of the proceedings, having carefully observed his demeanor and expression, the Court finds Walsworth's testimony regarding his alleged misunderstandings of bankruptcy law or his claimed honest motives and intentions in filing the cross-complaints, to be wholly unpersuasive. While always polite and generally well-mannered, he was nevertheless evasive, inconsistent in his recollections, and erratic in the manner in which he displayed his legal abilities.

The Court finds that Walsworth's conduct in this action fits squarely with the kinds of acts punitive damages are designed to punish and deter. He is, after all, a lawyer. Lawyers are the guardians of the law, and it is the laws of a free and democratic society which make justice, with respect for the individual, possible.

(Preamble to A.B.A. Model Code of Professional Responsibility.) His acts demonstrate an intentional abuse of legal power and authority for an improper purpose. His conduct was callous and spiteful, and demonstrated a high degree of deliberate and arrogant defiance of federal bankruptcy law. A significant punitive damage award is warranted due to Walsworth's utter disrespect for the bankruptcy process by violating the automatic stay, after specific warning, not once, but twice. The automatic stay is the linchpin of the bankruptcy proceeding, providing the debtors' only shield from the actions of creditors as they attempt to reorganize not only their finances but their shattered lives. *See In re Stringer, II,* 847 F.2d 549, 551 (9th Cir. 1988).

In making its decision regarding punitive damages, the Court is particularly mindful that they are imposed not only to punish, but also to deter the wrongdoer and any others who might consider engaging in the same kind of malicious conduct. At trial Walsworth testified that he heads a firm of eight to ten attorneys. It disturbs the Court greatly that Walsworth might be considered to be by his young associates, or anyone else, a "smart" lawyer.

Once a determination is made that punitive damages are appropriate, the Court must then determine the appropriate amount of such damages.

"An award of punitive damages '... should be gauged by the gravity of the offense and set at a level sufficient to insure that it will punish and deter. *Mercer v. DEF, Inc.,* 48 B.R. 562, 565 (Bankr. Minn.1985) ... The award must be sufficient to sting the pocketbook of the wrongdoer. *Id.* at 566.'" *In Re Aponte,* 82 B.R. 738, 745–46 (Bankr.E.D.Pa.1988) The rule in the Ninth Circuit and California is that punitive damages must be proportional; they must be reasonably related to compensatory damages. *Hudson v. Moore Business Forms, Inc.,* 836 F.2d 1156, 1162–63 (9th Cir.1987). However, there is no fixed ratio or formula for determining the proper proportion between the two. *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1024–25 (9th Cir.1985) *cert. denied,* 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). The factors to consider in determining a punitive damage award are (1) the nature of the defendants' acts, (2) the amount of the compensatory award, and (3) defendants' wealth. *Professional Seminar Consultants, Inc. v. Sino Am. Technology Exch. Council, Inc.,* 727 F.2d 1470, 1473 (9th Cir.1984) (citation omitted).

In *In re Kroh Bros. Dev. Co.,* 91 B.R. 525 (Bankr.W.D.Mo.1988), the Bankruptcy Court, finding defendant, whose principals were attorneys, willfully violated § 362(h) by initiating state court action without prior relief from stay, awarded actual damages and interest of approximately $21,000.00, attorneys' fees of $73,000, and, punitive damages of $140,000.00 (punitive damages nearly 1.5 times compensatory damages). The *Kroh* court noted that "[i]t is of utmost significance that [defendant] was given the opportunity to stop its course of action and act responsibly. Yet [defendant] ... plowed on with the ... lawsuit, even when it knew that Kroh had filed bankruptcy ..." *Id.* at 538. The court also stated that other factors included in its determination were the necessity for a deterrent effect, the character of the wrongful action and the high degree of malice exhibited. *Id.* Other bankruptcy courts have awarded punitive damages for willful violations of § 362(h) in a ratio to compensatory damages (including the total of actual damages and attorneys' fees). *In Re Bragg,* 56 B.R. 46 (Bankr.M.D.Ala.1985) (5:1); *In Re Falls Bldg., Ltd.,* 94 B.R. 471 (Bankr.M.D.Tenn.1988) (5:1); *Mercer v. D.E.F., Inc.,* 48 B.R. 562 (Bankr.Minn.1985) (2.5:1); *In Re Depew,* 51 B.R. 1010 (Bankr. E.D.Tenn.1985) (2:1); *Matter of Nat'l Marine Sales and Leasing, Inc.,* 79 B.R. 442 (Bankr.W.D.Mo.1987) (1.5:1).

Based upon the foregoing findings, punitive damages are awarded against Walsworth and in favor of Sansone in the sum of $25,000.00. No punitive damages are assessed against Sigler based upon his testimony, and the Court's belief, that he only followed the advise of his attorney, whom

he believed to know the law and act in good faith.

The Court reached the above conclusions even prior to Walsworth being caught in an apparent perjury during the trial.

## TAPE RECORDED EVIDENCE SHOWING PERJURY

In early testimony as an adverse witness, Walsworth was asked by the debtor's attorney whether he had made certain statements during a telephone conversation with debtor's state court attorney, Anderson, on August 10, 1987. Burd's examination of Walsworth proceeded as follows:

Q. Do you recall having a telephone conversation with William Anderson on August 10, 1987, in which you told him that you had proof that the lawsuit had been noticed to State Farm?

A. I am aware Mr. Anderson makes that false declaration. There was never any such conversation with Mr. Anderson.

Q. You never told Mr. Anderson that you could either make or break his client's case against State Farm because you could prove notice?

A. That's correct.

Q. Never said that?

A. I don't recall ever saying anything like that.

The telephone conversation pertained to debtor's intended lawsuit against State Farm. Sansone asserted that she had tendered the 1985 Sigler Action to State Farm for defense, but that State Farm, in bad faith, denied receiving notice of such request from her and thereafter failed to tender such defense. It was from these same circumstances that the Wooley, Fagan and Grannis cross-complaints for damages arose. Walsworth claimed on their behalf that, to their detriment, she failed to tender the lawsuit to State Farm for their defense.

At a later point in the trial Anderson testified that on August 10, 1987, he had a telephone conversation with Walsworth wherein Walsworth stated his client could make or break Sansone's claim against State Farm. When asked whether he had

any corroboration of his testimony, he stated that he had recorded the conversation. The Court, over the objection of Walsworth and Sigler, and after Anderson laid a foundation, admitted the tape into evidence for the limited purpose of impeaching Walsworth's credibility. *See* Fed.R.Evid. 105.

In essence, the tape recording of the telephone conversation verified Anderson's testimony. In the conversation Walsworth told Anderson that he had the evidence necessary for debtor to establish that she had given State Farm the required notice. He then offered that for one-half of the damages Sansone recovered against State Farm, he and Sigler would provide this evidence. Walsworth further stated that if he was not given one-half of debtor's recovery, he would make sure that the notice requirements were not met. The significant portions of the tape recording are as follows:

ANDERSON: How can I go to my clients and suggest to them that they share 50% of what they get, which is going to be substantial, with you when we don't know whether you have anything that would be worth even pursuing?

WALSWORTH: Well, I think whether you ever get anything out of State Farm depends upon Sigler.

ANDERSON: In what way?

WALSWORTH: Well, because he can make or break your whole case.

ANDERSON: How can he make or break my client's case against State Farm?

WALSWORTH: Easily. There are certain conversations and documentation to which we are privy to that you guys are not. We will have to relinquish all our work product as to attorney-client privileges in regard to those.

ANDERSON: I just don't understand how Sigler can help my client in advancing any action against State Farm.

ANDERSON: What are you offering my client?

WALSWORTH: I'm offering them a lot. We could make or break their case.

ANDERSON: In what way? What are you offering?

WALSWORTH: One of the absolute mandatory requirements that your people are ever going to have to establish against State Farm is notice.

ANDERSON: And you're going to contend that no notice was ever given?

WALSWORTH: What I say is that we can make or break your case in that regard.

ANDERSON: And if my clients agree with you, you'll make sure that notice is met, is that what you're saying?

WALSWORTH: Absolutely.

ANDERSON: You have information that notice was given, is that what you're saying?

ANDERSON: I take it that you have some inside information from State Farm in some way?

WALSWORTH: Absolutely. Haven't you figured out that we've been on their payroll for the last three years?

WALSWORTH: Let me put it to you this way. If [Sansones] and Sigler can split it down the middle whatever they get, they're ahead of the game a lot more than they are now because I guaranty you that I know their case inside and out. I've been with them for three years and I know ... State Farm's position on it, and I guaranty it. And I'm not just saying this, I can guaranty it. I can make or break Sansone's case and they know it.

ANDERSON: Who? Sansones or State Farm?

WALSWORTH: State Farm.

Walsworth contends that the admission of the tape was in violation of both federal and state law. Federal Rule of Evidence 613 allows prior inconsistent statements to be admitted for the purposes of impeaching a witness. Additionally, 18 U.S.C. § 2511(2)(d) states:

It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State. 18 U.S.C. § 2511(2)(d).

Here, Anderson was not acting under color of law and was a party to the communication. Thus, the sole issue under 18 U.S.C. § 2511 is whether Anderson recorded his conversation with Walsworth for the purpose of committing a "criminal or tortious act." *Moore v. Telfon Communications Corp.*, 589 F.2d 959 (9th Cir.1978) is directly on point. In *Moore*, the president of a franchisor (hereinafter referred to as president) had a common practice of recording conversations with franchisees pertaining to statistical information and advertising leads. *Id.* at 963. President subsequently recorded seven conversations he had with the head of a franchisee, Moore, without Moore's consent for the purpose of documenting threats of extortion by Moore. *Id.* Moore later filed actions against president and the franchisor, Telfon, for invasion of privacy under both California law (*Cal.Penal Code* §§ 630–637) and Federal law (18 U.S.C. § 2511). In discussing California law, the appellate court stated that "[s]ection 632 prohibits recording, intentionally, and without the consent of all parties, a confidential communication. The definition of 'confidential communication' *excludes* communications made in circumstances in which the parties to the communication may reasonably expect that the communication may be overheard or recorded. *Cal.Penal Code* § 632(c)." *Id.* at 965. The *Moore* court held that recording the conversation for the purpose of obtaining evidence of extortion is specifically permitted by *Cal.Penal Code* § 633.5 and thus would be admissible.

The court then addressed the alleged violation of 18 U.S.C. § 2511(2)(d) and stated that because the franchisor's president was not acting under color of law and was a party to the communication, as was Anderson in his conversation with Walsworth, the "interception is unlawful only if

992

done for the purpose of committing a criminal, tortious or injurious act." *Id.* at 965; 18 U.S.C. § 2511(2)(a), (d). The court held that Congress did not intend the words "criminal" or "tortious" "to embrace every act which disadvantages the other party to this communication. Such a reading would nullify the exemption created by § 2511(2)(a), (d). Presumably there is some disadvantage in having any conversation intercepted in the absence of consent of all parties. Congress, we believe, intended to permit one party to record conversation with another when the recorder is acting out of a legitimate desire to protect himself." *Id.* at 966.

■ Walsworth contends that Anderson recorded the conversation for the purpose of using it against him and his clients in the future and was, therefore, recorded for the purpose of committing a criminal, tortious, or injurious act. Walsworth's argument, however, fails to understand the Ninth Circuit's interpretation of the term "injurious act" in *Moore, supra.* The content of Walsworth's telephone conversation i.e., he would withhold evidence unless his extortionate demands were met, are exactly the kinds of conversations the *Moore* court authorizes to be recorded under 18 U.S.C. § 2511(2)(a), (d). The Court finds that Anderson was simply, as *Moore* finds permissible, "acting 'out of a legitimate desire to protect himself.'" *Id.* In addition, the Court does not find that Anderson had any criminal, tortious, or injurious purpose in recording the conversation.

It is not the purpose of the statute to protect persons from having the contents of their discussion disclosed by the person with whom they had such discussion; rather, the purpose is to prevent the interception of a telephone call by a third person who is not a party to the conversation. Persons normally cannot have a constitutionally protected expectation that the person to whom they voluntarily reveal incriminating information will keep it secret. *United States v. Hodge,* 539 F.2d 898, 905 (6th Cir.) *cert. denied,* 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1976).

Of course, the upshot of the testimony regarding the telephone conversation between Anderson and Walsworth is that Walsworth directly perjured himself at trial. Furthermore, the content of the conversation is evidence that the cross-complaints were brought in bad faith. As previously noted, I found Walsworth to be totally unbelievable throughout the course of his testimony and the Court came to this conclusion even before the playing of the tape recorded conversation.

## CONCLUSION

The Court finds Walsworth's conduct throughout this entire matter to be not only outrageous in its effect upon the debtor, but to demonstrate an utter disrespect for the Courts of the United States.

The Court, by this opinion, will refer the matter of Walsworth's conduct at trial to the California State Bar and the Bar of the Central District for disciplinary proceedings, and to the United States Attorney's Office for a determination of whether there is reason to believe that he committed bankruptcy crimes as proscribed under 18 U.S.C. § 152.

This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

Plaintiff Gale Ann Sansone shall recover damages from defendants, as follows: Compensatory damages from defendants Jeffrey P. Walsworth, Esq. and Daniel Sigler, jointly and severally, in the sum of $2,118.88; Additional compensatory damages from defendant Jeffrey P. Walsworth, Esq., separately, in the sum of $10,594.42; Punitive damages from Jeffrey P. Walsworth, Esq. in the sum of $25,000.00.